UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LONZA GREENWOOD LLC,

                                    Plaintiff,

            -v-

NATALS, INC.,

                                    Defendant.

25 Civ. 6319 (PAE)

OPINION AND ORDER

PAUL A. ENGELMAYER, United States District Judge:

This decision resolves a dispute in this trade-secret case about whether, under the standards applicable at this early stage, the plaintiff has identified the trade secrets it contends have been infringed with reasonable particularity.

Plaintiff Lonza Greenwood LLC ("Lonza") is a manufacturer with expertise in healthcare capsule technologies. Defendant Natals, Inc. d/b/a Ritual ("Ritual") is a designer and distributor of multi-nutrient capsules. On January 1, 2024, the parties entered into a sales agreement (the "Agreement") under which Lonza was to exclusively supply, and Ritual was to exclusively purchase, certain capsules. The Agreement was conditioned on Lonza's construction of a production facility in Colmar, France, and its delivery of sample capsules produced at this facility by an agreed-upon date. On March 18, 2025, after test capsules were not provided by the agreed-upon date, Ritual notified Lonza that it would no longer be bound by the Agreement.

The parties' commercial relationship nonetheless continued. Ritual sent Lonza purchase orders and invited Lonza to bid for a new product under development. In July 2025, Ritual informed Lonza that it had decided not to award Lonza the contract for the new product. Lonza

1

claims that the contract was secured by a third party ("Competitor"), and that Ritual exploited Lonza's trade secrets in connection with work on that contract.

On July 31, 2025, Lonza brought this action for breach of contract, unjust enrichment, and, relevant here, violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.* Dkt. 1 ("Complaint"). On August 1, 2025, Lonza moved for emergency relief, seeking to enjoin Ritual from (1) further disclosing or using Lonza's alleged trade secrets, (2) working with Competitor , and (3) "breaching" the exclusivity provision of the Agreement. Dkt. 10 at 4–15. On December 1, 2025, after briefing, the Court held argument, and denied Lonza's request for a preliminary injunction, while ordering expedited discovery.

On December 8, 2025, the Court ordered "that Lonza must identify the alleged trade secrets with reasonable particularity before discovery can commence." Dkt. 58 at 1.[1] On December 12, 2025, Lonza served its trade secret identification on Ritual. Dkt 68-1 ("Identification"). On December 19, 2025, Ritual objected to the Identification and to Lonza's demands for discovery keyed to it. Dkts. 68; 70. On December 22, 2025, Lonza replied. Dkt. 74. On January 6, 2026, Ritual filed a further response. Dkt. 79. In brief, Ritual contends that the Identification is formulated using improperly categorical terms and is overbroad, Dkt. 68 at 2, whereas Lonza contends that its Identification is reasonably particular as required at this stage of litigation and is properly tailored, Dkt. 74 at 6–12.

For the reasons that follow, the Court upholds Lonza's Identification and denies Ritual's request to preclude Lonza from undertaking discovery into Ritual's "confidential information." Dkt. 68 at 11.

---

[1] On December 17, 2025, the Court entered a case management plan. Dkt. 63.

"A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999)). In determining whether information constitutes a trade secret, New York courts consider the following factors:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*N. Atl. Instruments, Inc.*, 188 F.3d at 44 (quoting *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993)). Where a plaintiff shows that its information meets these criteria, courts have found such to qualify as a trade secret under the DTSA. *See, e.g., Nostrum Pharms., LLC v. Dixit*, No. 13 Civ. 8718, 2014 WL 4370695, at *10 (S.D.N.Y. Sept. 2, 2014) (alleged appropriation of "manufacturing process and formulation of a generic version" of a particular drug made out a viable claim for trade secret misappropriation); *Faiveley Transp. Malmo AB*, 559 F.3d at 117 (drawings pertaining to "dimensions and tolerances, surface finishes, material selection and treatments, lubrication specifications, and special instructions for manufacture, testing, and assembly" constituted a trade secret under New York law); *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1063 (2d Cir. 1985) ("[A] customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret . . . .").

A plaintiff is required to identify the alleged trade secrets with "reasonable particularity," and bears the burden of demonstrating the sufficiency of its trade secret identification. *Rocket*

3

*Pharms., Inc. v. Lexeo Therapeutics, Inc.*, 764 F. Supp. 3d 115, 118 (S.D.N.Y. 2025); *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 800 (2d Cir. 2023). An identification that is "so vague and indefinite" as not to place a defendant on notice fails to meet this standard. *Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 261 (S.D.N.Y. 2014) (internal quotation marks omitted) ("*Big Vision*"), *aff'd sub nom. Big Vision Priv. Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015) (summary order); *Bytemark, Inc. v. Xerox Corp.*, No. 17 Civ. 1803, 2022 WL 120980, at *4 (S.D.N.Y. Jan. 11, 2022).

In assessing "the strength of the showing sufficient to identify trade secrets with sufficient particularity," a court must consider the "stage of the case." *Toptal, LLC v. Andela Inc.*, No. 24 Civ. 4027, 2024 WL 6913063, at *1 (S.D.N.Y. Sept. 13, 2024) (quoting *Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17 Civ. 147, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017)); *Syntel Sterling Best Shores Mauritius Ltd.*, 68 F.4th at 801. Prior to discovery, a plaintiff makes that showing if it identifies the alleged trade secrets with enough information "(1) to put the defendant on notice of the nature of plaintiff's claims, and (2) to allow defendant to discern the relevancy of any discovery requests." *Rocket Pharms., Inc.*, 764 F. Supp. 3d at 118; *see also Syntel Sterling Best Shores Mauritius Ltd.*, 68 F.4th at 801 (specificity requirement "place[s] a defendant on notice of the bases for the claim being made against it"). At this early stage, the requirement of reasonable particularity is not "a procedural device to litigate the ultimate merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists." *Uni-Sys., LLC*, 2017 WL 4081904, at *4. "[A] very general showing" may suffice prior to discovery, because "the trade secrets plaintiff may not know which part of its trade secrets have been misappropriated or cannot determine the full scope of its

4

claims until it gains a better understanding of how a defendant operates." *Id.* Accordingly, less specificity is required than after discovery, when a court, on a summary judgment motion, is called upon to evaluate whether the plaintiff's claims have evidentiary support. *See id.*; *Ferguson v. Ferrante*, No. 13 Civ. 4428, 2014 WL 1327968, at *2 (S.D.N.Y. Apr. 3, 2014) (finding, before depositions, that plaintiff's disclosure had to "contain more than a mere naked assertion that such secrets are used" by defendant, but need not provide the "full basis for the belief that the identified information constitutes a trade secret" (cleaned up)).

The Court determines that at this stage Lonza's Identification meets the reasonable particularity standard. Of necessity to protect confidentiality, the Court here recounts Lonza's Identification at a more general level than put by Lonza in its under-seal filing.

Lonza has supplied a 14-page document comprising 23 narrative paragraphs identifying its alleged trade secrets. These are not, as Ritual contends, articulated at only a categorical level. Lonza's Identification recites particular pairings of ingredients necessary to render certain attributes; the stage at which individual ingredients should be added during production; and the adjustments Lonza made in concert with Ritual to enhance the performance of its products. Identification ¶¶ 2, 5–6. And it specifies processes Lonza developed in its collaboration with Ritual, such as its use of certain ingredients to aid in maintaining product quality, *id.* ¶ 7, and its adaptation of its processes in response to a concern by Ritual about the discoloration of capsules. *Compare* Identification ¶¶ 7–8 (requesting information about modifications made to address product darkening), *with* Dkt. 23 (affidavit from Ritual's research and design lead that asserts a "persistent issue involv[ing] the visual inconsistency of inner capsules" produced by Lonza . . . as "Lonza's manufacturing process regularly turned the inner capsules dark brown"); *compare* Identification ¶ 22 (requesting information regarding quality control metrics), *with* Dkt. 23

(identifying the development of "quantitative standards and specifications relating to inner capsule and outer oil colors/shades on a per product basis" for Lonza's products). Because the parties' collaboration under the Agreement was subject to a confidentiality agreement, Lonza further represents that its alleged trade secrets have not been publicly disclosed or incorporated in its patents. Identification at 6. These details support that the alleged trade secrets were the product of substantial effort to "develop[] the information" and are not easily "duplicate[d] by others." *N. Atl. Instruments, Inc.*, 188 F.3d at 44.

Lonza's Identification comfortably clears the flexible standard for pre-discovery allegations of trade secrets. Lonza has made more than the showing required at this stage, when it has not had the benefit of discovery to refine its understanding of defendant's operations and how specifically these may have exploited its protected secrets. *See Uni-Sys., LLC*, 2017 WL 4081904, at *4. Consistent with numerous other courts to have upheld narrative descriptions of alleged trade secrets, the Court finds Lonza's Identification sufficient at this stage. *See, e.g., Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*, No. 22 Civ. 5138, 2025 WL 219063, at *5 (S.D.N.Y. Jan. 16, 2025) (finding "narrative descriptions of twelve alleged trade secrets" sufficiently particular to identify trade secrets prior to discovery); *Toptal, LLC*, 2024 WL 6913063, at *2 (finding 50-page narrative disclosure broken down by trade secret and identifying documents "reflecting each trade secret" sufficiently particular prior to discovery); *Norbrook Lab'ys Ltd. v. G.C. Hanford Mfg. Co.*, No. 3 Civ. 165, 2003 WL 1956214, at *3 (N.D.N.Y. Apr. 24, 2003) (finding "the process by which the chemicals are combined-under controlled conditions of relative amounts, sequence, time, rate, and temperature at each stage-and the know-how required to move from lab scale theory to commercial scale production" sufficiently particular prior to discovery).

Lonza's Identification is readily distinguished from cases, including those Ritual cites, in which courts have found a trade secret inadequately specified. *See, e.g., Xerox Corp. v. Int'l Bus. Mach. Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) (rejecting belated definition of a trade secret as a "list of documents containing or referring items of trade secrets and confidential data and know-how" (cleaned up)); *Insulet Corp. v. EOFlow, Co.*, 104 F.4th 873, 881 (Fed. Cir. 2024) (rejecting definition of purported trade secret as "any and all Confidential Information of [plaintiff]" and "any information that contains, derives from, or incorporates such Confidential Information" . . . [and] "(a) any and all information or materials that were marked 'confidential' . . . and (b) any and all CAD files, drawings, or specifications created by [plaintiff], whether or not they were marked 'confidential.'" (citation omitted)); *Heyman v. AR. Winarick, Inc.*, 325 F.2d 584, 590 (2d Cir. 1963) (plaintiff's casual reference to "quaternary" or a broad class of chemical compounds did not constitute a trade secret).

Lonza's Identification is sufficiently particular to put Ritual on notice as to the nature of its claims, and to enable Ritual to evaluate knowledgably whether Lonza's discovery requests are proper and relevant. The Identification is also synchronous with Lonza's substantive claims, which principally allege that Ritual "misappropriated Lonza's trade secrets" to assist the Competitor in developing the same "manufacturing and processing technology" and producing "the exclusive [p]roducts Lonza contracted to produce for Ritual." *Compare* Identification ¶¶ 1–21, *with* Complaint at 14–17. Salient too, Ritual has answered Lonza's complaint. *See* Dkt. 61; *Uni-Sys., LLC*, 2017 WL 4081904, at *4 (defendant's answer to a complaint supported that plaintiff had "met its [trade secret] burden" by indicating defendant had "an ability to defend the action"). Consistent with the confidentiality provision in the parties' Agreement, which covered "information relating to Products, specifications, services, equipment, materials, and capsule

7

filling," Complaint ¶ 44, the Identification specifies materials, ratios, techniques, and manufacturing settings used in performing the Agreement, Identification ¶¶ 10–12. *See Norbrook Lab'ys Ltd.*, 2003 WL 1956214, at *3–5 (ordering discovery to proceed notwithstanding defendant's objections that "[t]ime, temperature, rate, etc. are factors in every chemical reaction" and that an identified process is "a common activity in pharmaceutical manufacturing," because plaintiff's identification of "a process, as a whole, rather than any particular individual step within the process" met the trade secret standard (cleaned up)).

The Court is further unpersuaded that Ritual will be incapable of meaningfully assessing the relevance of Lonza's discovery demands to its trade secret claims. The Identification is in line with the areas of expedited discovery that Lonza, at the December 1 hearing, stated it anticipated seeking. *Compare* Identification at 6–14, *with* 12/1/5 Tr. at 52 ("formulations," "processes," "QC," "how things get filled").

Ritual's challenges to Lonza's trade secret definition are unpersuasive. Ritual principally characterizes Lonza's Identification as too "categorical" to enable informed discovery to proceed. Dkt. 68 at 4. But that characterization is belied by Lonza's Identification, which sets out, for each trade secret category, two to seven narrative paragraphs. *See, e.g.,* Identification ¶¶ 10 (listing specific ingredients); 11 (specific bander settings); 22 (specific formulation adjustments). These identifications suffice. *Rocket Pharms., Inc.*, 764 F. Supp. 3d at 118.

Ritual also faults Lonza's Identification for referring to external documents, but that critique is also wide of the mark. Far from allowing "dozens of pages of materials" to stand in for its identified trade secrets, as Ritual suggests, Lonza's Identification properly cites the documents as "*further* examples" or "*additional* examples" of the identified material. *Id.* ¶¶ 10–14, 16–17, 21–24 (emphasis added). These examples are thus clarifying as to Lonza's

8

designated trade secrets. *See, e.g., id.* ¶¶ 16 (identifying specific excel spreadsheet); 17 (identifying specific KPI report); 20 (identifying specific slide deck). This case is thus far afield from *Big Vision, supra*, on which Ritual relies in faulting Lonza for referencing documents while identifying its trade secrets. In *Big Vision*, the "dozens of pages" plaintiff waved before the court were "undifferentiated, non-confidential machine printouts and Trial Plans, none of which was actually drafted by [plaintiff]." 1 F. Supp. 3d at 260–61. There is nothing of the sort here.

Finally, a number of the cases Ritual cites arose in different procedural postures from this one. *Xerox Corp.*, for example, involved a trade secret identification made "after nearly a year of pre-trial discovery." *See* 64 F.R.D. at 371. *Big Vision* likewise addressed the particularity following extensive discovery (13 months' worth) and at the summary judgment stage. *See* 1 F. Supp. 3d at 249. And *Insulet Corp. v. EOFlow, Co.* involved a trade secret identification made in support of a motion for a preliminary injunction, 104 F.4th at 878, whereas the Court here has denied such relief, and the proposed definition there was notably broader than Lonza's here, *id.* at 881.

For these reasons, the Court sustains Lonza's Identification as sufficiently particular so as to place Ritual on notice of Lonza's claims and enable Ritual to discern the relevancy of, and ably litigate disputes over, discovery requests. *Rocket Pharms., Inc.*, 764 F. Supp. 3d at 118. The Court accordingly denies Ritual's request to stay trade secret discovery.[2]

---

[2] Ritual describes Lonza's discovery requests as "sweeping." *See* Dkt. 68 at 9–11. The instant motion, however, does not call upon the Court to resolve a discovery dispute arising from the breadth of the request for production. To the extent that any such dispute arises, counsel are directed to follow the Court's Individual Rules, which require, *inter alia*, that the parties meet and confer before raising, via letter-briefs, a discovery dispute. *See* Judge Paul A. Engelmayer's Individual Rules and Practices in Civil Cases, Rule 2(C), https://nysd.uscourts.gov/hon-paul-engelmayer (Feb. 2026).

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: February 12, 2026
       New York, New York