UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LONZA GREENWOOD LLC,

                                        Plaintiff,

                    -v-

NATALS, INC.,

                                        Defendant.

---

25 Civ. 6319 (PAE)

ORDER

PAUL A. ENGELMAYER, United States District Judge:

Plaintiff Lonza Greenwood LLC ("Lonza") has moved for leave to amend its Complaint

to join USPL Nutritionals, LLC ("USPL") as a defendant in this action. Dkt. 86-1 ("Motion").

USPL has moved to intervene for the limited purpose of opposing the Motion.[1] Dkts. 99–100,

101-2 ("USPL Opp'n"). Defendant Natals, Inc. d/b/a Ritual ("Ritual") also opposes Lonza's

Motion. Dkt. 102 ("Ritual Opp'n"). For the reasons that follow, the Court grants the Motion.

## I.    Background

The Court assumes familiarity with the background of this case. In brief, Lonza is a

healthcare manufacturer with expertise in capsule technologies. Dkt. 1 ("Compl.") ¶ 8. Ritual is

a designer and distributor of multi-nutrient capsules. *Id.* ¶ 12. USPL, also a capsule

manufacturer, has supplied capsules to both Ritual and Lonza. Dkt. 101-3 ("Luhadia Decl.")

¶¶ 2–3.

---

[1] Neither Lonza nor Ritual oppose USPL's motion to intervene for the purpose of filing its
opposition. Dkt. 100 at 1. Because USPL has a cognizable interest in responding to the Motion,
the Court grants its motion to intervene to enable it to respond. *Eletson Holdings, Inc. v. Levona
Holdings Ltd.*, No. 23 Civ. 7331, 2025 WL 1369730, at *4–5 (S.D.N.Y. May 9, 2025).

On January 1, 2024, Lonza and Ritual entered into a sales agreement (the "Agreement") under which Lonza was to exclusively supply, and Ritual was to exclusively purchase, capsules subject to certain conditions. Compl. ¶ 1. Ritual, however, eventually repudiated the Agreement. *Id.* ¶ 32. Its stated reason for so doing was that Lonza had failed to meet a condition in the Agreement that it deliver to Ritual, by an agreed-upon date, sample capsules that it had produced at a facility that Lonza had constructed in Colmar, France. *Id.* ¶¶ 26, 32. Lonza contends that this stated reason was pretextual. It further contends that the real reason Ritual backed away from the Agreement was that it had secretly entered into an arrangement with a third-party capsule manufacturer that would meet Ritual's supply needs. *Id.* ¶¶ 70–77. The Complaint termed that third-party manufacturer "Competitor." *See, e.g., id.* ¶¶ 48, 50, 55, 65. "Competitor" has since been identified as USPL. Motion at 2. Lonza further contends that, to enable Competitor to meet Ritual's manufacturing needs, "Competitor" used Lonza's manufacturing trade secrets, which were either shared by Ritual or which "Competitor" otherwise obtained. Compl. ¶ 65.

Lonza's Complaint identified two principal bases for its suspicion that Ritual had shared its trade secrets with an entity with whom Ritual had entered into a manufacturing agreement. First, during a March 6, 2025 governance meeting with Ritual, Lonza had shared performance indicators that it alleges constitute "trade secret information"; within two hours, a representative from "Competitor" contacted Lonza regarding the shared information. *Id.* ¶¶ 47–48. Second, on July 9, 2025, while Lonza was preparing a bid for a new Ritual product, it contacted a third-party supplier to obtain a quote for a "necessary," "specialized," and "unique" ingredient, only to learn from the supplier that it had just received the exact same inquiry from "Competitor." *Id.* ¶¶ 52–54. Lonza contends that "Competitor" was pursuing the specialized ingredient, and in a position

2

to use it in the service of an agreement with Ritual, "because Ritual [had] shared Lonza's trade secrets with 'Competitor' to enable them to manufacture the capsule." *Id.* ¶ 55.

On or around July 17, 2025, Ritual informed Lonza that it had not won the contract to develop Ritual's new product. Dkt. 19 at 26. Lonza contends that Ritual had awarded the contract to Competitor, and that Competitor will use Lonza's trade secrets to develop the new product. Compl. ¶ 1.

On July 31, 2025, Lonza brought this action against Ritual for breach of contract, unjust enrichment, and violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.* Dkt. 1. On August 1, 2025, Lonza moved for emergency relief, seeking to enjoin Ritual from (1) further disclosing or using Lonza's alleged trade secrets, (2) working with Competitor, and (3) "breaching" the exclusivity provision of the Agreement. Dkt. 10 at 4–15. On December 1, 2025, the Court heard argument on Lonza's request for emergency relief. At that conference, Ritual identified the entity whom Lonza had termed Competitor as USPL, confirming Lonza's suspicions to that effect. The Court denied Lonza's request for a preliminary injunction, but ordered expedited discovery. Dec. 1, 2025 Hr'g Tr. at 36–52.

On December 8, 2025, the Court issued an order setting a January 19, 2026 deadline for amending the complaint or adding parties. Dkt. 58. The same deadline was contained in the case management plan that the Court so-ordered on December 17, 2025. Dkt. 63 ("Amended pleadings may not be filed and additional parties may not be joined except with leave of the Court. Any motion to amend or to join additional parties shall be filed . . . [by] January 19, 2026.").

On January 27, 2026, eight days after that deadline passed, Lonza moved to amend its complaint to join USPL. Dkts. 86–87. Lonza contends that leave to amend is proper because it

3

diligently pursued and acted upon the discovery that prompted this motion to amend, such that there is good cause for its having missed the deadline, satisfying Federal Rule of Civil Procedure 16. Motion at 2–3. Lonza alternatively argues that joining USPL is required, because USPL is a necessary party within the meaning of Rule 19(a). *Id.* at 5.

On February 6, 2026, USPL moved to intervene and opposed the Motion. Dkts. 100–01. The same day, Ritual opposed the Motion. Dkts. 102–03. Both argue that Lonza moved too late to add USPL and that USPL is not a necessary party. USPL Opp'n at 13–19; Lonza Opp'n at 10–16. USPL also argues that joinder would cause it prejudice, because several months of discovery have occurred. USPL Opp'n at 20–21. On February 13, 2026, Lonza replied. Dkt. 110 ("Reply").

## II.    Legal Standards Governing Leave to Amend

Under Rule 15(a)(2), leave to amend a complaint shall be "freely" given when "justice so requires," although "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)). But, when a case management plan has been entered that has restricted a party's ability to file an amended complaint, Rule 15's liberal standard must be balanced against the more stringent standard of Rule 16, under which such an order "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir.2000); *Scott v. N.Y.C. Dep't of Corr.*, 445 Fed. App'x. 389, 390–91 (2d Cir. 2011) (summary order).

Thus, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker*, 204 F.3d at 340; *see also*

4

*Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009).  To show good cause, a movant must demonstrate that it has been diligent, *see Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 266–67 (2d Cir. 2009), and that, "despite its having exercised diligence, the applicable deadline could not have been reasonably met," *Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 5 Civ. 3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) (citing *Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)).  A party fails to show good cause when the proposed amendment rests on information "that the party knew, or should have known, in advance of the deadline." *Id.* at *8 (collecting cases); *see also Lamothe v. Town of Oyster Bay*, No. 8 Civ. 2078, 2011 WL 4974804, at *5–6 (E.D.N.Y. Oct. 19, 2011).

## III.    Discussion

Lonza undisputedly missed the deadline to amend its complaint to join USPL—it moved to do so eight days (equating to six business days) after the deadline the Court had set for doing so.  Motion at 8.  The Court first determines whether Lonza has shown good cause under Rule 16 to add a party out of time.  Finding good cause, the Court then considers whether leave to amend is proper under Rule 15.

### A.    Good Cause Under Rule 16

The "primary consideration" under Rule 16 is whether the party that has missed a deadline to add a party has shown that it acted with reasonable diligence. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  The Court here finds that Lonza has shown good cause for moving to add USPL eight days after the deadline

A threshold issue is when Lonza first knew that USPL was the "Competitor" whom its Complaint claimed was colluding with Ritual. *See Bd. of Trs. of Loc. Union No. 373 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. Benefit Funds v. Mid*

5

*Orange Mech. Corp.*, No. 17 Civ. 2669, 2020 WL 5836520, at *7 (S.D.N.Y. Oct. 1, 2020) ("When delayed discovery prevented a party from discovering facts sufficient to support a cause of action, a party must show that it acted diligently upon learning the new facts" (cleaned up)); *Parker*, 204 F.3d at 339–40; *Mason Tenders Dist. Council v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36–37 (S.D.N.Y. 2016).

Lonza represents that, although it had suspected USPL was the Competitor, including based on the March 6 and July 9 events reviewed above, it first confirmed that this was so on December 1, 2025, during the hearing before this Court on its request for emergency relief. Motion at 8. Ritual and USPL contend that Lonza should have appreciated the Competitor's identity before December 1, 2025. Ritual Opp'n at 7–8, 13–14; USPL Opp'n at 17. But Lonza's contemporaneous representations to the Court merit weight. Lonza stated that, although it had a likely suspect in mind, it was not certain who Competitor was—and was wary of the repercussions of making such accusations against the entity it suspected. Dec. 1, 2025 Hr'g Tr. at 16.[2] There is no basis to disbelieve Lonza's good-faith representation. And once Ritual confirmed at the hearing that USPL is the entity Lonza calls "Competitor," *id.* at 61, Lonza acted with dispatch. It and Ritual agreed that the expedited schedule they were adopting would entail "buil[ding USPL] into the discovery scheme." *Id.* at 53. And, on December 18, 2025, Lonza, consistent with that schedule, served a subpoena on USPL. Motion at 3. On January 19, 2026, the same day as the deadline for adding a party, USPL produced records pursuant to that subpoena. *Id.* Three days later, Ritual produced records to Lonza pursuant to a subpoena. *Id.*

---

[2] At the hearing, Lonza's counsel stated that "we're not sure who [Competitor] is. We think we know who it is. The competitor, if it is who we think it is, is a newbie to the liquid filled capsule space." Dec. 1, 2025 Hr'g Tr. at 6 ("We have a very strong suspicion on who it is, but we're not positive," *id.* at 16).

On January 27, 2026, five days later, and eight days after the deadline to do so, Lonza moved to add USPL. *Id.* at 8.

In considering Lonza's claim of good cause to miss the deadline to add a party, it is vital to bear in mind the expedited schedule of this litigation. Lonza cannot fairly be faulted for taking the modest time it took to promulgate subpoenas to USPL and Ritual. It did so on December 18, 2025—one day after the Court entered the parties' case management plan. Motion at 3; Dkt. 63. USPL, for its part, cannot fairly be faulted for furnishing the responsive discovery when it did—USPL's production to Lonza was undisputedly timely. But it was made on the deadline itself for adding a party. And Ritual made its production three days later. It was clearly reasonable for Lonza, within a manner of days after receiving these voluminous productions, to file its motion to add USPL, attaching a proposed amended complaint.

There was also a good reason for amending the Complaint to add USPL. As Lonza notes, the materials produced in response to its subpoenas showed, as Lonza had suspected, that Ritual and USPL had entered into an agreement involving USPL's manufacture of capsules for Ritual *before* the date on which Lonza had missed the deadline to provide Ritual with samples produced at its Colmar, France facility. Motion at 2–3. Ritual had cited Lonza's missed deadline as the ostensible basis on which it had exited their agreement. Compl. ¶ 32. These materials, Lonza states, fortified the inference that Ritual's stated basis to exit the agreement had been pretextual—motivated by a desire to direct its relevant manufacturing needs to USPL.

And Ritual cannot claim surprise that Lonza has moved to add USPL. That Lonza would seek to add the entity its Complaint had called "Competitor" was anticipable to anyone at the December 1 conference. And, as developed below, Ritual and USPL have not shown significant prejudice from Lonza's short deadline miss, which occurred early in the discovery period. *Fresh*

*Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174–77 (S.D.N.Y. 2014) (granting untimely motion to add party early in discovery process, and, in not finding undue prejudice, contrasting motion with similar ones made on "eve of trial," *id.* at 177).

In these circumstances, Lonza's conduct comfortably accords with that in cases finding good cause, on the ground that the moving party had exercised reasonable diligence in seeking, out of time, to amend. *See, e.g., Moore v. City of New York*, No. 22 Civ. 694, 2023 WL 3628242, at *3 (E.D.N.Y. May 24, 2023) (plaintiff demonstrated good cause when it expressed its intention to amend within four days of receiving Rule 26 disclosures); *Roland v. McMonagle*, No. 12 Civ. 6331, 2014 WL 2861433, at *5 (S.D.N.Y. June 24, 2014) (good cause standard met where, approximately two weeks after obtaining crucial information regarding the identity of the defendants, plaintiff requested leave to amend); *Flores v. Nieva*, No. 14 Civ. 7960, 2017 WL 899942, at *4 (S.D.N.Y. Mar. 6, 2017) (amendment would "no doubt inconvenience" defendant, but granting it nonetheless where plaintiff had been "diligent overall" in pursuing the action); *cf. Charter Commc'ns, Inc. v. Loc. Union No. 3*, 338 F. Supp. 3d 242, 257 (S.D.N.Y. 2018) (exercising "broad discretion under Rule 16(b)" to consider the proposed pleading given the lack of prejudice to defendant, even where plaintiff did not demonstrate diligence). The Court similarly finds reasonable diligence here.

## B.      Compliance with Rule 15

Rule 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires," although "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy*, 482 F.3d at 200–01 (quoting Fed. R. Civ. P. 15(a)). Among such factors, undue prejudice is generally considered "the most important factor in ruling on a Rule 15(a) motion." *Cartier, Inc.*

*v. Four Star Jewelry Creations, Inc.*, No. 1 Civ. 11295, 2004 WL 169746, at *3 (S.D.N.Y. Jan. 28, 2004).

### 1.    Undue Prejudice

Undue prejudice results when the proposed amendment would (1) "require the opponent to expend significant additional resources to conduct discovery and prepare for trial"; (2) "significantly delay the resolution of the dispute"; or (3) "prevent the plaintiff from bringing a timely action in another jurisdiction." *A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 317 (S.D.N.Y. 2014) ("*A.V.E.L.A. I*") (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)). "The non-moving party bears the burden 'of demonstrating that substantial prejudice would result were the proposed amendment to be granted.'" *Id.* (quoting *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608, 2014 WL 113728, at *3 (S.D.N.Y. Jan. 13, 2014)).

"[C]entral to this determination" is whether "a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading." *Id.* The procedural posture of the case may also be relevant. *See, e.g., Ruotolo v. City of New York*, 514 F.3d 184, 192 (S.D.N.Y. Feb. 6, 2008) ("Undue prejudice arises when an amendment [comes] on the eve of trial and would result in new problems of proof" (cleaned up)); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)). However, an "adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *U.S. ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank. & Tr. Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir. 1989); *see A.V.E.L.A. I*, 34 F. Supp. 3d at 317–318 (same).

Ritual and USPL have not demonstrated undue prejudice here. Their opposition focuses on the discovery burdens the amendment would entail. Ritual Opp'n at 19–20; USPL Opp'n at 20–21. Ritual claims that adding USPL would cause it financial strain and delay resolution of

9

the dispute. USPL claims that it would be prejudiced by joining this expedited litigation in mid-stream. *Id.* at 21.

These arguments are unpersuasive.

The burdens of increased discovery do not support finding undue prejudice here. *See Middle Atl. Utilities Co. v. S. M. W. Dev. Corp.*, 392 F.2d 380, 386 (2d Cir. 1968) ("The burden of further discovery and motions is not a satisfactory basis to deny the motion to amend"). In nearly every case in which a party is added, discovery expands and litigation costs increase. That is inherent in the addition of a party. *See, e.g.*, *Block v. First Blood Assocs*, 988 F.2d 344, 351 (2d Cir. 1993) (alleged prejudice "solely because of the time, effort and money they expended in litigating this matter" does not rise to undue prejudice and should not bar amendment); *Aris-Isotoner Gloves, Inc. v. New York Glove Co.*, No. 83 Civ. 9034, 1984 WL 1158, at *2 (S.D.N.Y. Nov. 7, 1984) ("Defendant's assertion of financial prejudice to the proposed additional defendants is not the type of prejudice that should motivate a court to deny a motion to amend under Rule 15(a)."); *Lopez Catzin v. Thank You & Good Luck Corp.*, No. 15 Civ. 7109, 2016 WL 11779676, at *2 (S.D.N.Y. June 1, 2016) (same).

The claim of unfair prejudice here carries little weight for multiple reasons. It could not have come as any surprise to either Ritual or USPL that Lonza would seek to add Ritual. That Lonza would so move was foreshadowed at the December 1 hearing. *See, e.g.*, Dec. 1, 2025 Hr'g Tr. at 53–54. Ritual, in fact, argued at the hearing that Lonza should have raised its concerns with USPL before filing suit. *See id.* at 31. That Lonza would add Ritual was also inherent in the nature of Lonza's allegations to the effect that private dealings between Ritual and Competitor, which Lonza depicted as collusive, had led Ritual to repudiate its contractual relationship with Lonza in favor of a business arrangement with Competitor. And later, before

10

discovery began, the Court had notified the parties that, were a third party added to the case, it would be free to seek leave to take additional discovery. Dkt. 93 (January 20, 2026 Order).

Moreover, Lonza's motion to amend was made mere days after the parties' agreed deadline for doing so, and was prompted by document productions by USPL and Ritual that substantiated an agreement between USPL and Ritual predating Ritual's repudiation of its contract with Lonza. This case is thus a far cry from cases involving late and prejudicial ploys to non-parties deep into discovery and with limited, if any, forewarning. *See, e.g. Friedman v. N.Y.C. Dep't of Hous. & Dev. Admin.*, 688 F. Supp. 896, 899–900 (S.D.N.Y. 1988), *aff'd sub nom. Friedman v. Dep't of Hous. Dev. Admin.*, 876 F.2d 890 (2d Cir. 1989) (denying leave to amend when joinder of six new parties would be unduly prejudicial at late date); *Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland*, No. 9 Civ. 4622, 2010 WL 4968247, at *6 (S.D.N.Y. Nov. 24, 2010) (denying substantially untimely leave to amend to discourage "the indolent and the cavalier"); *Green v. Wolf Corp.*, 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (same).

Salient too, the discovery germane to USPL's joinder will also overlap substantially with discovery already underway. The history and nature of the relationship between Ritual and USPL, and between Ritual and Lonza, have been front and center from the jump. *See* USPL Opp'n at 18 (noting that Lonza's amended pleading is "based on the same factual allegations as those" of the Complaint); Ritual Opp'n at 17 (noting that Lonza's amended pleading relies on the "very same" facts as previously). And, as Ritual and USPL acknowledge, "Lonza's proposed amendment pursues the same five claims" and includes the same prayer for relief. *Id.* at 11. In these circumstances, courts have been skeptical of broad claims that adding a new defendant will cause undue prejudice to the defendants. *See, e.g., Essar Steel Algoma Inc. v. S. Coal Sales Corp.*, No. 17 Misc. 360, 2018 WL 6332900, at *6 (S.D.N.Y. Oct. 29, 2018); *Mason Tenders*

11

*Dist. Council of Greater N.Y.*, 318 F.R.D. at 38–40; *Michalek v. Amplify Sports & Entm't LLC*, No. 11 Civ. 508, 2012 WL 2357414, at *5 (S.D.N.Y. June 20, 2012).

Finally, USPL, the newcomer to this case, cannot claim to have been blindsided. On the contrary, it concedes that it "has been aware of the case since late July [2025]" and that it and Lonza "have been in discussion about these claims for some time." USPL Opp'n at 20, 21 n. 2; *see Middle Atl. Utilities Co.*, 392 F.2d at 386 (finding leave to amend appropriate where defendant had "long known about the contract and the disagreement over its interpretation").

The Court accordingly rejects Ritual's and USPL's claim of unfair prejudice. That central factor does not support denying the motion to amend.

### 2.    Undue Delay

The Court also does not find undue delay, substantially for the reasons set out earlier in connection with the application of Rule 16. Indeed, insofar as the Motion comports with Rule 16, it follows that the Motion also satisfies Rule 15's more liberal standard. *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (leave to amend under Rule 15 should be provided "freely" (cleaned up)); *Perez v. MVNBC Corp*, No. 15 Civ. 6127, 2016 WL 6996179, at *5 (S.D.N.Y. Nov. 29, 2016) (comparing standards under Rules 15 and 16); *In re Int. Rate Swaps Antitrust Litig.*, No. 16 Misc. 2704 (PAE), 2019 WL 1147149, at *4 (S.D.N.Y. Mar. 13, 2019) (same).

In brief, Lonza has supplied a valid "explanation," for its modest miss of the operative deadline. *See Klinkowitz v. Jamaica Hosp. Med. Ctr.*, No. 20 Civ. 4440, 2022 WL 818943, at *3 (E.D.N.Y. Mar. 17, 2022). Its motion to amend to add USPL was catalyzed by the document productions from USPL and Ritual, respectively, the latter of which itself was made three days after the deadline to amend. Lonza represents that USPL produced 20,000 pages on January 19, and that Ritual produced 600,000 pages on January 22, and that these illuminated the timing and nature of the business relationship between the two. Motion at 2–3. These productions, Lonza

12

represents, included an agreement between USPL and Ritual, executed several months before Ritual terminated the Agreement, under which USPL was to exclusively supply Ritual with the very products covered by Lonza and Ritual's exclusive Agreement. *Id.* at 3. That Agreement, Lonza explains, underlie its claims of contract-breach and trade secret claims. *Id.*

It remains, of course, for discovery to test Lonza's claims, which, barring settlement, will be resolved either on summary judgment or at trial. The Court does not prejudge these claims. But Lonza has made a credible showing that newly produced evidence, and not foot-dragging, caused it to file the motion to add USPL when it did. *See Perez*, 2016 WL 6996179, at *5 (no undue delay where plaintiffs moved to join party within nine days of obtaining certain disclosures, notwithstanding defendants' counter that earlier, "[p]laintiffs knew or should have known [who] to sue"); *Green*, 50 F.R.D. at 223 (granting leave to amend almost four years after action commenced even where facts were known at outset of litigation).

Accordingly, the delay here was not undue. It was justified. *Compare State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 147 (E.D.N.Y. 2007) (finding two-and-a-half year delay in filing proposed amendments not undue when plaintiffs supplied sufficient cause), *with Feldman v. Lifton*, 64 F.R.D. 539, 542 (S.D.N.Y. 1974) (denying leave to amend under Rule 15 where plaintiffs delayed two years after learning information that allegedly led them to amend their complaint).

### 3. Bad Faith and Futility

Finally, this is not a case in which an amendment should be barred on grounds of bad faith or futility.

Bad faith may be found where a plaintiff moves to amend merely to "gain a tactical advantage" or needlessly prolong the litigation. *Dass v. City Univ. of N. Y.*, No. 18 Civ. 11325, 2024 WL 4986914, at *5 (S.D.N.Y. Dec. 5, 2024) (cleaned up). Ritual and USPL claim that

13

Lonza knew, or should have known, some of the information it terms newly discovered. It is certainly the case—and Lonza admits—that it strongly suspected Ritual had entered into an agreement with USPL to effectively supplant Lonza. But, tellingly, Ritual and USPL do not claim that Lonza had documentary proof of such.

It is unpersuasive to claim bad faith on Lonza's part for not amending where its suspicion that such an agreement existed had not been substantiated. Lonza's caution before making such a serious allegation is the antithesis of bad faith. *Randolph Found. v. Duncan*, No. 00 Civ. 1172, 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002) ("[T]he fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith."); *Blagman v. Apple, Inc.*, No. 12 Civ. 5453, 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014) ("To the extent that the defendants claim that [the plaintiff's] delay was strategic, they provide no showing of bad faith apart from the delay itself." (cleaned up)); *Primetime 24 Joint Venture v. DirecTV, Inc.*, No. 99 Civ. 3307, 2000 WL 426396, at *4–5 (S.D.N.Y. April 20, 2000) (same). And the failure to meet a case management plan's deadline is not, without more, a basis to infer bad faith. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 453–54 (S.D.N.Y. 2016) (cleaned up). Nor do Ritual and USPL make any coherent argument why making the amendment on January 27 rather than January 19 gave Lonza with a tactical advantage. On the contrary, the incremental discovery burdens from adding a new adversary would appear to fall equally on Lonza.

Nor is there a basis to argue futility. Where a proposed amendment is clearly futile, a court should deny leave to amend. But here, there is no basis to claim futility. *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990); *see* 6 C. Wright, A. Miller & M. Kane, *Fed. Prac. & Proc. Civ.* § 1487 (3d ed. 2024) ("If a proposed amendment is not clearly futile, then

14

denial of leave to amend is improper."). And Ritual and USPL have not come forward with any arguments along this line. They have not argued that Lonza's revised pleadings are frivolous. Ritual Opp'n at 16–20; USPL Opp'n at 16–21. These pleadings clearly are not. This factor, too, favors Lonza. *See Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1198–99 (2d Cir. 1989).

## C.    Necessity Under Rule 19

As an independent basis for its motion to amend to add USPL, Lonza argues that USPL is a necessary party to this action under Rule 19(a). If USPL is not joined, it argues, the Court will be unable to fashion complete relief among the existing parties. Motion at 6–8. Ritual counters that complete relief among the existing parties is attainable without adding USPL, and that USPL's factual relevance to this controversy, and its possession of germane evidence, does not render it necessary party. Ritual Opp'n at 10–12. USPL makes similar arguments. USPL Opp'n at 13–16.

Rule 19(a) governs compulsory joinder. *Rostropovich v. Koch Int'l Corp.,* No. 94 Civ. 2674, 1995 WL 104123, at *9 (S.D.N.Y. Mar. 7, 1995). Under Rule 19(a)(1), a party must be joined as a necessary party, if in its absence "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). To determine whether an absent party is "required," the Court considers whether:

> the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

*Id.* at 19(a)(1)(B). "The party moving for compulsory joinder has the burden of showing that joinder is appropriate." *Fadlevich v. JD 34th St. Realty LLC,* 775 F. Supp. 3d 668, 692 (E.D.N.Y. 2025) (cleaned up). It must make more than "'an unsupported assertion that [the non-

joined party] has a claim to that interest.'" *Dunn v. Standard Bank London Ltd.*, No. 5 Civ. 2749, 2006 WL 217799, at *2 (S.D.N.Y. Jan. 30, 2006) (quoting *Jonesfilm v. Lion Gate Int'l,* 299 F.3d 134, 140 (2d Cir. 2002)).

The parties have made substantial arguments and counter-arguments whether this standard is met here. In light of the holding, above, that the amendment to add Lonza as a party is compatible with Rules 15 and 16, however, there is no need to resolve whether USPL's joinder is strictly necessary under Rule 19, as Lonza contends, or merely highly advantageous as a means to achieve economy for the parties, the witnesses, the public, and the Court. The efficiencies of litigating this case in a single proceeding—as opposed to requiring Lonza to bring a separate action against USPL that would implicate much the same events, evidence, and legal claims—should be obvious to all. The Court accordingly does not reach Lonza's argument under Rule 19.

## CONCLUSION

For the foregoing reasons, the Court grants Lonza's motion for leave to amend. The Court respectfully directs the Clerk of Court to terminate the motions pending at dockets 86, 87, and 99.

The Court directs the parties to file a revised case management plan on the docket of the case by **March 12, 2025**, which is to adapt the existing schedule to the addition of USPL. The Court further schedules an in-person status conference on **March 17, 2026** at 3:30 p.m. in Courtroom 1305 of the Thurgood Marshall U.S. Courthouse, 40 Centre Street, New York, New York 10007. The purpose of the conference will be to discuss the revised case management plan and any associated issues.

SO ORDERED.

_Paul A. Engelmayer_
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: March 4, 2026
      New York, New York

17