# Weil, Gotshal & Manges LLP

VIA CM/ECF

100 Federal Street, Floor 34
Boston, MA 02110-1848
Phone: +1 617 772 8300
Fax: +1 617 772 8333

**Adam Gershenson**
+1 (617) 772-8310
Adam.Gershenson@weil.com

March 12, 2026

Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re: *Lonza Greenwood LLC v. Natals, Inc. d/b/a Ritual*, Case No. 25 Civ. 06319 (PAE)

Dear Judge Engelmayer,

This letter addresses three live discovery disputes. ***First***, Lonza failed to produce documents regarding its covert manufacture of a copycat "clear," vegan prenatal vitamin that Lonza (a) developed in league with Ritual's former product developer, (b) launched days after fact discovery closed, and (c) used, to all appearances, Ritual's confidential information. ***Second***, Lonza has refused to produce relevant communications after explicitly and repeatedly waiving privilege over the core issue of trade secret ownership. ***Third***, Lonza has refused to supplement its improper interrogatory responses, which cite entire transcripts and hundreds of documents in lieu of substantive answers. Per the Court's rules, Ritual has conferred with Lonza (and USPL) on these issues and unfortunately reached an impasse. Ritual therefore respectfully requests that the Court compel production of responsive documents and proper responses.[1]

## Ritual Is Entitled to Discovery Into Lonza's Use of Ritual's Information to Build a Copycat Product.

The Sales Agreement requires Lonza to maintain the confidentiality of information "relating to Products, specifications, services, equipment, materials, and capsule filling" and "to use such information only for the purpose of . . . manufacturing the [specific Ritual] Products." Sales Agreement Exhibit D § 8, Dkt. No. 26–1. Lonza cannot use Ritual's confidential information to manufacture products for anyone else. The evidence suggests Lonza did exactly that: the SmartyPants product, which launched days after fact discovery closed and uses a capsule-in-capsule architecture following Ritual's design, was developed while Lonza enjoyed full access to Ritual's confidential formulations, specifications, and manufacturing protocols, which were provided only for the permitted purpose of manufacturing Ritual's products.

---

[1] Per Local Rule 37.1, Ritual has excerpted the relevant discovery requests and deposition testimony at issue. If the Court wishes to review the full responses and objections to the RFPs and Interrogatories and transcript, which Lonza has designated as Highly Confidential, Ritual will file the materials under seal.

**Weil, Gotshal & Manges LLP**

Lonza evidently made this SmartyPants brand knock-off at the same facility as Ritual's product, using the same ingredients, the same vegan branding, the same "clear" capsules, the same capsule-in-capsule technology, and the same Lonza personnel working with Ritual's former Senior Product Development Manager.[2] These overlaps, and the timing of the product release, strongly suggest that Lonza used Ritual's confidential information to manufacture the copycat, and Ritual is entitled to discovery that Lonza thus far withheld. If, as the evidence strongly suggests, Lonza used Ritual's confidential information to manufacture a competing product, Lonza breached the Sales Agreement's confidentiality provisions. This newly revealed breach supports Ritual's affirmative defense that Lonza's breach precludes recovery. The discovery is additionally relevant to (a) support Ritual's counterclaim for breach of contract; (b) rebut and offset Lonza's claims regarding unjust enrichment and good faith and fair dealing (because Lonza entered a contract requiring Ritual to meet minimum volumes while secretly preparing a competing product that would undercut Ritual's ability to do so); and (c) challenge Lonza's arguments that it has been financially damaged and irreparably harmed because it was unilaterally abiding by the "exclusivity" provisions in the parties' Sales Agreement and was thus turning away other customers and left with "millions of dollars' worth of unused raw materials and an exclusivity obligation that precludes Lonza from using them" (because in fact Lonza *was* using overlapping ingredients in its knockoff).[3] Amended Complaint ¶¶ 24–26, Dkt. No 117; Lonza's Br. Supp. Prelim. Inj. 4, 13, Dkt. No. 10.

Ritual's previously served discovery requests encompass this material and therefore it should have already been produced by Lonza. Ritual's Interrogatory No. 20 and Requests for Production numbers 30, 42, and 43 seek information regarding competitors utilizing overlapping formulations or manufacturing processes, Lonza's business relationships with competitors, other Lonza customers manufacturing similar products, and Lonza's manufacturing capacity for similar products.[4] Documents and information concerning the SmartyPants product are directly responsive to each of these requests.

Accordingly, Ritual seeks: (1) all documents, communications, purchase orders, and contracts concerning the SmartyPants product; (2) documents identifying when the SmartyPants discussions began and when manufacturing commenced; (3) documents concerning use of Ritual confidential information; (4) documents concerning Lonza's relationship with any former Ritual employees involved in developing SmartyPants; and (5) depositions of Lonza personnel involved with SmartyPants development.

---

[2] *See* https://www.linkedin.com/in/natashachamberlin/.

[3] *Compare* Sales Agreement Exhibit A §7(a), Dkt. 26–1 (listing ingredients that render products "exclusive"), *with* Ex. 1(SmartyPants label listing the same ingredients). Lonza seemingly moved one oil-based ingredient from the outer capsule to the inner capsule to evade this exclusivity provision. Discovery will also demonstrate whether that gambit suffices to avoid that additional breach.

[4] *See* Interrogatory No. 20 ("whether Lonza has knowledge of competitors that utilize formulations, specifications . . . which overlap with the asserted Trade Secrets"); RFP No. 30 (documents regarding "any business relationship between Lonza and Competitor"); No. 42 (documents "concerning other customers of Lonza that manufacture or sell products similar to the Products"); No. 43 (documents "concerning Lonza's manufacturing capacity for Products or similar products, including capacity utilization, production schedules, and forecasts.").

Page 3                                                                      **Weil, Gotshal & Manges LLP**

**Lonza Waived Privilege Over its Assessment of Trade Secret Ownership.**

"[A]t issue" waiver occurs "where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information." *Windsor Sec., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 518 (S.D.N.Y. 2017) (quoting *Deutsche Bank Tr. Co. of Americas v. Tri-Links Inv. Tr.*, 837 N.Y.S.2d 15, 23 (1st Dept. 2007)).

Lonza explicitly, intentionally, and repeatedly waived privilege over the issue of ownership of the asserted trade secrets. At deposition, (after first testifying the plaintiff did *not* own the asserted trade secrets), Lonza's corporate representative returned from a break with counsel and in response to Lonza's own scripted questions, testified affirmatively that Lonza "reached out to our IP counsel, Ralph Dean, and confirmed trade secrets are owned by the site that they are created in, within the Lonza IP infrastructure. So Lonza Greenwood LLC owns the trade secrets that are created in the structure, so the Greenwood LLC site owns the ones that are created in the Greenwood site." *See* T. White Tr. at 322:8–16. Lonza repeated this testimony verbatim in its Supplemental Response to Interrogatory No. 14, which asks whether "Lonza Greenwood, LLC (as opposed to any parent, subsidiary, affiliate, or other entity, including Defendant) owns each asserted Trade Secret."

Ownership of the asserted information is central to this dispute. The first sentence of Lonza's technical expert's report states the case is "primarily" about ownership. By voluntarily disclosing and relying on the substance of its counsel's advice to support its trade secret ownership position, Lonza waived privilege over that subject matter. Ritual is entitled to test whether counsel provided that advice, what analysis supported it, and whether the advice addressed Ritual's ownership rights under the Sales Agreement. Ritual requests that the Court order Lonza to immediately produce all legal communications, drafts, analyses, memos, opinions, documents, interpretations, and related materials on the issue of trade secret ownership by Lonza or Ritual, including any interpretations of ownership under the Sales Agreement.

**Lonza's Interrogatory Responses are Improper.**

Lonza's interrogatory responses improperly cite entire deposition transcripts and hundreds of documents in lieu of substantive answers. This textbook "document dump" violates Fed. R. Civ. P. 33(d). Lonza's supplemental responses repeat the same boilerplate list of eleven deposition transcripts "and all exhibits cited therein" across nearly every interrogatory, while citing several hundred Bates-numbered documents without any explanation of how each document relates to the specific interrogatory. This approach is evasive, incomplete, and impermissibly shifts to Ritual the burden of culling through Lonza's own documents to derive answers that Lonza is obligated to provide. Ritual requests that the Court order Lonza to provide responses that separately and fully answer each interrogatory.

For these reasons, Ritual respectfully requests that the Court compel Lonza to: (1) produce discovery concerning the SmartyPants product; (2) produce the documents subject to its privilege waiver on trade secret ownership; and (3) provide proper interrogatory responses.

**Weil, Gotshal & Manges LLP**

Respectfully submitted,

/s/ *Adam Gershenson*

Adam Gershenson

To ensure the Court receives Lonza's response in advance of the case management conference scheduled for March 17, 2026 at 3:30 p.m., Lonza's response to Ritual's letter is due by March 16, 2026 at 5:00 p.m. The Court does not invite replies

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

March 12, 2026
New York, New York