UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LONZA GREENWOOD LLC,

                               Plaintiff,                          25 Civ. 6319 (PAE)

                    -v-

                                                                   OPINION & ORDER
NATALS, INC. *et al.*,

                               Defendants.

PAUL A. ENGELMAYER, United States District Judge:

This case involves claims by a healthcare supplement manufacturer, Lonza Greenwood

LLC ("Lonza"). Lonza claims that defendants USPL Nutritionals, LLC ("USPL"), also a

healthcare supplement manufacturer, and Natals, Inc. d/b/a Ritual ("Ritual"), a designer of multi-

nutrient supplements, conspired to misappropriate Lonza's trade secrets, and that USPL

frustrated an exclusive agreement between Lonza and Ritual. Dkt. 117 ("AC").

USPL, which Lonza added to the case as a party late in fact discovery,[1] now moves to

dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Dkt.

144 ("Mot."). For the reasons that follow, the Court grants the motion.

I.      **Background**

        A.      **Factual Background**

        The Court incorporates by reference the factual background set out in its March 4, 2026

Opinion, granting Lonza's motion for leave to amend. *See Lonza Greenwood LLC v. Natals,*

---

[1] Lonza filed this action against Ritual on July 31, 2025. Dkt. 1. On January 27, 2026, Lonza
sought leave to join USPL as a defendant. Dkt. 86. On March 4, 2026, the Court granted that
motion. Dkt. 116. On March 5, 2026, Lonza filed the AC, naming both Ritual and USPL as
defendants. Dkt. 117 ("AC").

*Inc.*, No. 25 Civ. 6319 (PAE), 2026 WL 608125 (S.D.N.Y. Mar. 4, 2026) ("*Lonza I*"). The background here is solely that relevant to USPL's pending motion to dismiss.

### 1.    The Parties

Lonza is a healthcare supplement manufacturer with expertise in capsule technologies. *See* AC ¶ 11. It is incorporated in Delaware and has a principal place of business in Greenwood, South Carolina. *Id.* ¶ 3.

Ritual is a designer and distributor of vitamins and dietary supplements. *Id.* ¶ 15. It is incorporated in Delaware and has a principal place of business in Culver City, California. *Id.* ¶ 4.

USPL supplies capsules or raw materials to both Ritual and Lonza. *Id.* ¶¶ 17–35; Mot. at 26. It is incorporated in New Jersey. AC ¶ 5.

### 2.    The Lonza-Ritual Business Relationship

Beginning in 2016, Lonza and Ritual formed a commercial relationship, in which Lonza manufactured and delivered capsules to Ritual consistent with purchase orders submitted by Ritual. *See id.* ¶ 18. Between 2016 to 2023, dealings between Lonza and Ritual were governed by purchase orders. *Id.* ¶¶ 19, 21.

On January 1, 2024, Lonza and Ritual entered into a sales agreement (the "Agreement") under which Lonza was to exclusively supply, and Ritual was to exclusively purchase, 12 product lines, or types of capsules, subject to certain conditions.[2] *Id.* ¶ 21. The design of each capsule generally consisted of beadlets or other smaller capsules suspended inside a translucent

---

[2] The capsules covered by the Lonza-Ritual agreement included: Essential for Men 50+ Multivitamin, Essential for Women 50+ Multivitamin, Essential for Women 18+ Multivitamin, Essential for Men 18+ Multivitamin, Essential for Women Postnatal Multivitamin, Essential for Women Prenatal Multivitamin, Essential for Teens for Him Multivitamin, Essential for Teens for Her Multivitamin, Synbiotic+, HyaCera Skin Capsule, Omega-3, and Natal Choline. AC ¶ 22.

outer capsule. *Id.* ¶ 23 (quoting Agreement). Although Lonza would purchase the beadlets or inner, smaller capsules from other vendors, assembly of the final product—that is, the "sealing" and "banding" of the different components—occurred at Lonza's facilities. *Id.* ¶ 54. Lonza represents that it worked extensively with Ritual to refine this production, develop a formulation that met Ritual's quality and stability requirements, and determine the optimal oils, excipients, and sealing techniques for each capsule. *Id.*

### 3.    The Lonza-USPL Business Relationship

Under the Agreement, Lonza was required to purchase certain raw materials from USPL to produce Ritual's products. *Id.* ¶ 26. In connection with this work, USPL knew the lead times, inventory, and supply for Ritual's products. *Id.* ¶ 124. Lonza and USPL also had an "independent working relationship" through which USPL received Lonza's beadlet-related technical assistance. *Id.*

#### a.    The Agreement

Lonza was required, under the terms of the Agreement, to purchase raw materials, such as the material used to produce the inner components of capsules, from USPL, identified in the Agreement as a "Third-Party Supplier." Agreement at 14. The Agreement identified 19 raw materials Lonza was required to purchase to produce Ritual's products. *Id.* Of those, 10 were to be purchased from USPL.[3] *Id.*

Various provisions of the Agreement addressed Lonza's work with USPL. These covered Lonza's stock requirements; shortfall notifications; binding purchase orders; third-party reporting; adverse quality and delivery trends; and procurement of materials and manufacturing

---

[3] These raw materials included "EFM 50+," "EFTG," "EFTB," "EFM 18+," "EFW 18+," "EFW 50+," "Hyacera," "Epre," "Epost," and "Synbiotic." Agreement at 14. Each was estimated to have a shelf life of 24 months. *Id.*

of finished goods. *Id.* at 7–9. The "adverse quality and delivery trends" provision required that, if an adverse delivery trend were "caused" by a third-party supplier, Lonza was to (1) notify Ritual in writing promptly after the third-party supplier missed a delivery date and (2) make every available effort to continue to timely deliver to Ritual. *Id.* at 8–9. If, within 30 days of the third-party attributed delay Lonza were to propose a new timeline to implement a remedy to the issues, such was to constitute a "reset" of the prevailing timelines. *Id.* at 9.

The Agreement also required that Lonza share with Ritual certain data, or metrics, regarding the work of third-party suppliers, such as USPL. *Id.* at 8. It stated:

> Lonza will provide Ritual with Third-Party Supplier scorecards and Ritual will provide Lonza business performance indicators that are mutually agreed upon by both parties on a quarterly basis during the Term, alongside existing Third-Party Supplier on time and in full (OTIF) metrics, and operational key performance indicators and such other information as reasonably requested by Ritual and mutually agreed upon by both parties that will be reported on a monthly basis, so that the parties may identify and anticipate potential risks and delays in BPOs caused by such Third-Party Suppliers.

*Id.*

### b.    *Supply Chain Issues with USPL*

By at least July 2024, Lonza alleges, USPL had "production delay problems" that resulted in tardy deliveries of its raw materials. AC ¶ 26. The "shortage of raw materials supplied by USPL" impeded Lonza's ability to produce certain capsules for Ritual at its new facility in Colmar, France. *Id.* ¶¶ 33–34.

Additionally, because Lonza and Ritual's Agreement required Lonza to anticipatorily purchase raw materials without knowing the precise scope of any order Ritual might submit, Lonza was often left with unused or excess raw material that it had purchased from USPL. *Id.* ¶ 26. Until May 2025, when that occurred, Lonza and USPL "work[ed] collaboratively" to find a "business solution." *Id.* However, beginning in May 2025, USPL "refused to engage in

collaborative discussions, leaving Lonza with millions of dollars' worth of unused raw materials." *Id.*

### 4.    The Ritual-USPL Business Relationship

Ritual represents that, as part of its capsule design process, it found and used suppliers besides Lonza to source ingredients, manufacture the inner capsule and beadlets, and perform other steps in its manufacturing process. Dkt. 21 ¶ 10.[4]  As a result, Ritual explains, it had an independent relationship with USPL.  USPL thus was both a downstream supplier of inner capsules and beadlets to Lonza, and independently, a manufacturer for Ritual of certain capsules outside the scope of the Lonza-USPL Agreement. *Id.* ¶ 17.

By at least early December 2024, Ritual and USPL began technical trials for various equipment at USPL's facility in New Jersey. Dkt. 146-1 ("Ritual-USPL Agreement") at 40.

On February 17, 2025, Ritual and USPL entered into an agreement, under which USPL was to manufacture 10 product lines for Ritual.[5] *Id.* at 1.  These involved products previously manufactured by Lonza under the Lonza-USPL Agreement. *Id.* at 30; AC ¶ 22.  Under the Ritual-USPL Agreement, the parties were to spend the period between December 9, 2024 to April 7, 2025, refining technical trials in order to generate 100,000 capsules of each of the 10 products. *See* Ritual-USPL Agreement.  Once USPL was able to meet such production quantities and "demonstrate continuous [four] hour runs," then Ritual, by no later than August

---

[4] Ritual so represented in a declaration submitted in opposition to an application for preliminary relief by Lonza, Dkt. 21, which the Court denied, *see Lonza I*, 2026 WL 608125, at * 2. USPL amplified on these facts in a declaration in support of its instant motion. Dkt. 146 ("Reckler Decl.").

[5] The capsules covered by the Ritual-USPL agreement included: Essential for Women Multivitamin 50+, Essential for Men Multivitamin 50+, Essential for Men Multivitamin 18+, Essential for Women Multivitamin 18+, Essential Postnatal, Essential Prenatal, Synbiotic+, HyaCera Skin Capsule, Omega, and Choline.  Ritual-USPL Agreement at 30.

15, 2025, was to place a purchase order with USPL for 10 million capsules with requested deliveries over a two-week period. *Id.* at 40.

The Ritual-USPL Agreement provided in section 9.15 that any "dispute, controversy or claim" arising out of the Agreement would be resolved "solely and exclusively" by binding arbitration, not in federal or state court. *Id.* at 17. Such arbitration was to be "conducted by the American Arbitration Association (AAA) under its rules then in effect, shall be conducted in English, and shall be located in New York, New York." *Id.* at 18. The parties further agreed that:

> To the extent arbitration does not apply, any Dispute arising out of or relating to this Agreement, may only be brought by in a State or federal court located in New York, New York. EACH PARTY HEREBY WAIVES ANY OBJECTION TO THIS VENUE AS INCONVENIENT OR INAPPROPRIATE, AND AGREES TO EXCLUSIVE JURISDICTION AND VENUE IN NEW YORK.

*Id.* It further stated that the "laws of the State of New York" governed the agreement without "giving effect to any conflict of law provision, and shall be used in any arbitration proceeding." *Id.* at 17.

### B.    Procedural History

On July 31, 2025, Lonza filed its initial complaint. Dkt. 1. On August 1, 2025, Lonza moved for emergency relief, seeking a preliminary injunction to, *inter alia*, enjoin Ritual from misappropriating Lonza's trade secrets, working with USPL, or breaching the exclusivity provisions of the Lonza-Ritual Agreement. Dkt. 8 at 1–2. On December 1, 2025, the Court heard argument, denied Lonza's request for a preliminary injunction, and set an expedited discovery schedule. *Lonza I*, 2026 WL 608125, at * 2. On December 8, 2025, the Court issued an order setting a January 19, 2026 deadline to amend the complaint or add parties. Dkt. 58. On January 27, 2026, eight days after that deadline passed, Lonza moved to amend its complaint to

join USPL. Dkt. 86. Lonza's amended complaint supplemented its earlier claims as against Ritual to include claims against USPL of, *inter alia*, misappropriating Lonza's trade secrets, tortiously interfering with the Lonza-Ritual Agreement, and engaging in a civil conspiracy with Ritual. AC ¶¶ 106–47.

On February 6, 2026, USPL moved to intervene and opposed Lonza's motion to amend, Dkts. 100–01, and Ritual also opposed the Motion, Dkts. 102–03. On March 4, 2026, the Court granted Lonza's motion for leave to amend to add USPL under Federal Rules of Civil Procedure 15 and 16, while declining to reach the issue whether USPL was a necessary party under Rule 19. Dkt. 116.

On March 5, 2026, Lonza filed the AC, the operative complaint today, naming Ritual and USPL as defendants. Dkt. 117. On March 27, 2026, USPL filed the motion at issue here—to dismiss the claims against it for lack of personal jurisdiction. Dkt. 144. On April 3, 2026, Lonza opposed. Dkt. 152. ("Opp'n."). On April 8, 2026, USPL replied. Dkt. 155 ("Reply").

## II.    Discussion

USPL moves to dismiss for lack of personal jurisdiction, under Rule 12(b)(2).

### A.    Applicable Legal Standards

For a federal court to exercise personal jurisdiction over a defendant, there must be a statutory basis for personal jurisdiction; and the exercise of personal jurisdiction must satisfy constitutional due process. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)); *see also In re*

*Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (cleaned up). Where the Court has not held an evidentiary hearing on this issue, "[p]laintiff need only make a prima facie showing of jurisdiction through affidavits and supporting materials to satisfy this burden." *Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, 434 F. Supp. 3d 142, 152 (S.D.N.Y. 2020) (cleaned up), *aff'd*, 846 F. App'x 37 (2d Cir. 2021) (summary order); *see also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997); *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993).

In assessing the plaintiff's showing, the court applies a "standard . . . akin to that on a motion for summary judgment," construing the "pleadings documents, and other evidentiary materials . . . in the light most favorable to the plaintiff and [resolving] all doubts . . . in its favor." *Melnick*, 346 F. Supp. 2d 499, 503 (S.D.N.Y. Nov. 15, 2004) (cleaned up); *see Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, No. 5 Civ. 10773, 2007 WL 1489806, at *2 (S.D.N.Y. May 21, 2007).

### B.    Discussion

USPL makes two arguments for dismissal. First, it argues that Lonza does not assert a proper statutory basis for asserting personal jurisdiction. Dkt. 147 at 15. It argues that the two bases Lonza invokes—New York's long-arm statute and Federal Rule of Civil Procedure 4(k)(1)(B), the "bulge service provision"—are unavailable here. *Id.* at 16–23. Second, it argues, exercising personal jurisdiction over USPL would not comport with constitutional due process. *Id.* at 24–32.

8

### 1.    Statutory Bases

Lonza invokes two statutory bases for exercising personal jurisdiction over USPL.

#### a.    Personal Jurisdiction Under CPLR § 302(a)(1)

Lonza argues that USPL is subject to specific personal jurisdiction under New York's long-arm statute, CPLR § 302(a)(1), under which a court may exercise personal jurisdiction over a non-domiciliary defendant that "transacts any business within the state or contracts anywhere to supply goods or services in the state," so long as "the claim asserted . . . arise[s] from that business activity." *Licci ex rel. Licci*, 732 F.3d at 168 (2d Cir. 2013) (cleaned up); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (requiring that a non-domiciliary defendants contacts with the state have a "substantial relationship" to the cause of action).

Under § 302(a)(1), for a New York court to have jurisdiction, the defendant need not have engaged in more than one transaction in, or directed to, New York. *See Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 70–74 (2006). Jurisdiction under § 302(a)(1) exists even if "the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (cleaned up); *see also Bank Brussels Lambert*, 171 F.3d at 787 (finding personal jurisdiction based on a single transaction where defendant was not physically present in state). In applying § 302(a)(1), a court considers the totality of the defendant's conduct. *See, e.g., CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." (citations omitted)).

In invoking § 302(a)(1), Lonza asserts that USPL has "purposefully created and maintained an ongoing New York-centered commercial relationship" consistent with transacting business in New York. Opp'n. at 16. It notes that the Ritual-USPL Agreement stipulated New York as its arbitral forum and that New York law would apply. *Id.* at 16–18; Ritual-USPL Agreement at 18. Jurisdiction in this state, it thus argues, derives from "the full package of New York-directed commitments in the Ritual-USPL Agreement together with the direct overlap between that agreement . . . and conduct at issue in this litigation." Opp'n. at 17.

That argument is—highly—unpersuasive. Lonza's breach of contract claims are not directed towards Ritual's agreement with USPL. Its claims rest on a breach of Ritual's agreement with Lonza. In Lonza's telling, the Ritual-USPL Agreement is nonetheless germane in that Ritual's business arrangement with USPL ostensibly motivated Ritual to misappropriate Lonza's trade secrets and to breach its exclusivity arrangement with Lonza.[6] But Lonza does not identify any aspect of the Ritual-USPL Agreement that required any party to ship products into New York, sell products in New York, hold any meeting or negotiation in New York, or breach any agreement in New York. Nor does the AC identify *any* New York location for Lonza's sales, marketing, distribution, or demand.[7] On the contrary, Lonza and Ritual are Delaware corporations and USPL is a New Jersey corporation. The inference Lonza urges, that the Ritual-USPL Agreement would inevitably interfere with a New York-centered business relationship,

---

[6] To that end, Lonza contends that "[f] For USPL to fulfill its obligations under the Ritual-USPL Agreement, Ritual must breach the Ritual-Lonza Sales Agreement." Opp'n. at 6.

[7] In its brief, Lonza states that USPL "entered a New York-governed manufacturing agreement," by serving as a third-party supplier identified in the Lonza-Ritual Agreement. Opp'n. at 19. Lonza does not support that claim factually. And, as reviewed below, USPL was not a signatory to the Lonza-Ritual Agreement.

lacks a factual basis in the record. Simply put, Lonza's reference to a contractual "New York-directed commitment" by USPL is empty rhetoric—a phrase without content.

The choice of law provision in the Ritual-USPL Agreement also does not carry the day for Lonza. "A choice of law provision in an agreement, while relevant, is insufficient by itself to confer personal jurisdiction over a defendant in New York under C.P.L.R. § 302(a)(1)." *Kogan L. Grp., P.C. v. Brace*, No. 20 Civ. 1012, 2020 WL 5038764, at *5 (S.D.N.Y. Aug. 26, 2020) (cleaned up). Such a clause is "not the equivalent" of a choice of forum clause. *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 827 (2d Cir. 1990). And where the parties' negotiations, business activity, and production occur in another jurisdiction, a New York choice of law provision does not support personal jurisdiction. *See Int'l Customs Assoc., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1260–63 (S.D.N.Y. 1995) (personal jurisdiction not established where contract contained New York choice of law provision but negotiations and execution were conducted in Taiwan and substantial part of contract performance was to occur in Taiwan). Lonza declares that USPL's activities were directed to New York because disputes were to be "governed by New York law" and USPL "entered into a relationship structured around New York law, New York dispute resolution, and New York courts." Opp'n. at 19–20. But there is no content behind this verbiage. Lonza does not allege, let alone support, that USPL, which is headquartered in New Jersey, ever negotiated over, transacted, or manufactured any product in New York. And choice of law alone does not support personal jurisdiction. *Int'l Customs Assoc., Inc.*, 893 F. Supp. at 1260–63; *Orchard Yarn & Thread Co., Inc. v. Schaub*, No. 17 Civ. 2477, 2018 WL 2694433, at *3 (S.D.N.Y. June 5, 2018) (personal jurisdiction not established where contract contained New York choice of law provision *and* plaintiff was New York

11

company, but there were no allegations that contract was negotiated in New York, that defendant ever came to New York, or that the contracted-for products were sold in New York).

The dispute resolution provision in the Ritual-USPL agreement is likewise a red herring. The agreement committed those parties to *arbitrate* any claim arising out of the agreement and to do so in New York. But a commitment to arbitrate in a particular venue does not compel a party to litigate in that venue. *See, e.g., Shalik v. Coleman*, 975 N.Y.S.2d 741, 743 (2d Dep't 2013) ("Although an agreement to arbitrate disputes in New York constitutes consent to personal jurisdiction in New York, such consent is limited to enforcement of the arbitration award or other arbitration-related proceedings . . . [and does not] give the [court] jurisdiction over the [party] for the purpose of adjudicating the plaintiff's cause of action at law."); *Moriac Shipping Co., Ltd. v. Meta Corp.*, No. 5 Civ. 2224, 2006 WL 89939, at *3 (S.D.N.Y. Jan. 12, 2006) ("While an agreement to arbitrate in a given venue at least arguably constitutes a consent to personal jurisdiction in that venue for the purpose of enforcing the agreement to arbitrate, this consent goes no farther than proceedings relating to enforcement of the arbitration agreement." (cleaned up)); *Sterling Nat'l Bank & Trust Co. v. S. Scrap Export Co.*, 468 F. Supp. 1100, 1103 (S.D.N.Y. 1979) ("[A]n arbitration clause is normally deemed to be a consent to the jurisdiction of the state or federal court only with regard to the enforcement of the arbitration clause itself, not with regard to any other dispute that may arise between the parties.").

To be sure, the parties committed to litigate claims within the scope of the agreement in New York in the event that the arbitration clause somehow did not apply. Ritual-USPL Agreement at 18. But the Ritual-USPL Agreement did not say anything about the manner or location in which claims that did *not* arise out of that agreement, such as those here, would be litigated. It does not speak to such claims at all. And Lonza does not cite any authority

12

supporting that an agreement to litigate exogenous matters in New York—let alone an agreement that so provides only in the event that a mandatory arbitration clause was inapposite—supports personal jurisdiction over the claims at issue. *See Mt. Hawley Ins. Co. v. Caltec Corp.*, No. 25 Civ. 2173, 2026 WL 636869, at *4 (S.D.N.Y. Mar. 6, 2025); *Everything Yogurt Brands, LLC v. Bianco*, No. 23 Civ. 1161, 2024 WL 3497757, at *6 (S.D.N.Y. July 22, 2024) (no personal jurisdiction under § 302(a)(1) where defendants' "only alleged connections to New York here are the arbitration clause and the New York choice-of-law clause in the . . . agreements").

Lonza separately fails the second requirement of § 302(a)(1)—that the defendant's contacts with the state have a "substantial relationship" to the cause of action. *Sole Resort, S.A. de C.V.*, 450 F.3d at 103. USPL's agreement with Ritual, in referencing New York, does so only in the context of dispute resolution. That activity (dispute resolution of claims arising from the Ritual-USPL Agreement) is far afield from the claims in this action, which centrally allege breaches of the Lonza-Ritual Agreement. And USPL was not a signatory to the Lonza-Ritual Agreement, under which disputes between those two parties would be resolved in "Federal and state courts sitting in New York." Agreement at 17. USPL was a third party from whom Lonza was to purchase raw materials for use in meeting its obligations under that Agreement, but USPL did not sign and was not bound by that agreement, and Lonza does not claim otherwise. There is thus no factual basis on which to claim that USPL purposefully availed itself of New York law. *See, e.g., In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 527 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 254–55 (2d Cir. 2007) ("nexus . . . between allegedly tortious conduct" and the donations defendant solicited was "so attenuated" that it "cannot alone be a sufficient basis upon which to establish jurisdiction over the defendant"); *Weil v. Am. Univ.*, No. 7 Civ. 7748, 2008 WL 126604, at *6

13

(S.D.N.Y. Jan. 2, 2008) (no personal jurisdiction where plaintiffs "failed to demonstrate that there is a nexus" between the business transactions and cause of action).

           *b.*       *Personal Jurisdiction Under Rule 4(k)(1)(B)*

Lonza alternatively invokes Rule 4(k)(1)(B)—the "bulge service provision" of the Federal Rules—as a statutory basis for personal jurisdiction. Opp'n. at 12–16; AC ¶ 10.

Under Rule 4(k)(1)(B), "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is a party joined under Rule 14 or 19 and is served within a juridical district of the United States and not more than 100 miles from where the summons was issued." Fed. R. Civ. P. 4(k)(1)(B); *Chang Young Bak v. Metro-N. R. Co.*, No. 12 Civ. 3220, 2013 WL 1248581, at *3–4 (S.D.N.Y. Mar. 26, 2013). "By its own terms, the bulge service provision applies . . . only to third parties impleaded under Rule 14, and additional parties to a pending action or a counterclaim or cross claim brought in under Rule 19." *Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, No. 7 Civ. 349, 2007 WL 704171, at *2 (S.D.N.Y. Mar. 7, 2007) (cleaned up).

It is undisputed that Rule 14 does not apply here, as USPL was not impleaded, but instead was added in an amended complaint filed by Lonza. The issue thus is whether Rule 19 applies. That rule provides for the compulsory joinder of parties who are needed for "fair and just adjudication" of the dispute at hand. *Rostropovich v. Koch Int'l Corp.*, No. 94 Civ. 2674, 1995 WL 104123, at *9 (S.D.N.Y. Mar. 7, 1995). Such joinder is necessary if, absent the non-party, "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). To determine whether an absent party is "required," the Court looks to whether:

> the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

*Id.* 19(a)(1)(B).

In permitting Lonza to amend to join USPL, the Court did not rely on Rule 19. *Lonza I*, 2026 WL 608125, at *8. In the main, courts have found that where a party was not joined under Rule 19, Rule 4(k)(1)(B) does not apply. *See, e.g., Clark v. Fullerton*, No. 11 Civ. 1120, 2012 WL 13027825, at *2 (D. Conn. June 13, 2012) (finding "[t]he problem" with plaintiff's claim is that "none of the[] parties was joined under Rule 14 or 19 . . . [t]hus, Rule 4(k)(1)(B) does not apply"); *Bromfield-Thompson v. Am. Univ. of Antigua/Manipal Educ. Americas LLC*, No. 19 Civ. 6078, 2020 WL 6048902, at *4 n.6 (S.D.N.Y. Oct. 13, 2020) ("Rule [4(k)(1)(B)] applies only to 'a party joined under Rule 14 or 19'" (quoting Fed. R. Civ. P. 4(k)(1)(B)), *aff'd sub nom. Bromfield-Thompson v. Am. Univ. of Antigua*, 2021 WL 4931953 (2d Cir. Oct. 22, 2021) (summary order); *Prince of Peace Enters., Inc.*, 2007 WL 704171, at *2. But courts have occasionally considered whether a defendant who was not joined pursuant to Rule 19 may nonetheless qualify as a necessary party in applying Rule 4(k)(1)(B). *See, e.g., Atlantic Mutual Ins. Co., Inc. v. CSX Expedition*, No. 00 Civ. 7668, 2002 WL 202195, at *2 (S.D.N.Y. Feb. 7, 2002) (examining whether a non-party was "a necessary party as defined in Rule 19(a)(1)" so as to invoke jurisdiction under Rule 4(k)(1)(B)); *Chang Young Bak*, 2013 WL 1248581, at *3–4 (notwithstanding that the "statutory language and case law" support finding Rule 4(k)(1)(B) to apply only where a defendant was joined under Rule 19, considering the necessity of a defendant where five other defendants brought cross-claims against that defendant).

Here, the Court does not find Rule 4(k)(1)(B) to apply, for two independent reasons.

First, under that rule's plain language, Lonza cannot assert personal jurisdiction over USPL, because it was not joined under Rule 19. *See Prince of Peace Enters., Inc.*, 2007 WL

15

704171, at *2. As the weight of the case law recognizes, that precludes exercising personal jurisdiction over USPL pursuant to the bulge service provision. *See, e.g., Chang Young Bak,* 2013 WL 1248581, at *4; *Clark,* 2012 WL 13027825, at *2; *Bromfield-Thompson,* 2020 WL 6048902, at *4 n.6.

Second, even if it were open to the Court to consider whether Rule 19 applied—and Lonza did invoke Rule 19 in seeking leaving to amend to add USPL, Dkt. 86, although the Court did not have occasion to reach that issue—USPL does not qualify as a necessary party under that rule. That is so for two reasons.

***Joinder unnecessary to accord complete relief***: USPL's joinder was not necessary to accord "complete relief" among the other parties (Lonza and Ritual), that is, to determine liability and fashion relief between them based on the original complaint. To the extent Lonza alleges that USPL is liable alongside Ritual for Ritual's alleged breach of the Lonza-Ritual Agreement, AC ¶¶ 122–27, or its alleged misappropriation of Lonza's trade secrets, *id.* ¶¶ 128–33, that does not render USPL a "necessary" party in this action. A party may be jointly or severally liable in an action yet not one "in whose absence the court would be obligated to grant partial or hollow [relief] rather than complete relief to the parties before the court." *Cont'l Cas. Co. v. Am. Home Assur. Co.,* No. 5 Civ. 7874, 2008 WL 1752231, at *3 (S.D.N.Y. Apr. 14, 2008) (cleaned up).

USPL's presence as a party is not necessary to resolve Lonza's claims against Ritual, including that Ritual breached the Agreement or disclosed Lonza's asserted trade secrets. *See St. John v. ADESA, Inc.,* 2024 WL 2972407, at *2 (2d Cir. June 13, 2024) (summary order). Lonza's claims of breach by Ritual can be adjudicated with USPL as a third-party witness. And with or without USPL participating as a party, Lonza can establish that Ritual misappropriated

16

its trade secrets, AC ¶¶ 69–79, including based on materials that Ritual allegedly shared with USPL, *id.* ¶¶ 73–75. Lonza's claims of a breach by Ritual of the Agreement's exclusivity provisions, *id.* ¶¶ 80–92, similarly do not require that USPL be a party. Establishing that Ritual declared itself no longer bound by the exclusivity provision and thereby breached the agreement, *id.* ¶ 90, does not require USPL to be a party. Finally, with or without USPL at the defense table, Lonza can pursue its claim that Ritual was unjustly enriched, *id.* ¶¶ 100–05, pursuing, for example, its claims that Ritual exploited its asserted confidential information without compensating Lonza. Lonza does not supply any sound reason to depart from the "well-settled rule" that a "joint and severally liable" party is not inherently "necessary" under Rule 19. *See, e.g., St. John*, 2024 WL 2972407, at *2 (parties that "share joint and several liability" do not become necessary parties); *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, No. 7 Civ. 10639, 2009 WL 427280, at *9–10 (S.D.N.Y. Feb. 23, 2009) (co-obligors, unlike co-obligees, are not indispensable parties); *Tehran–Berkeley Civil & Envtl. Eng'r v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 243 (2d Cir. 1989) ("We have construed Fed. R. Civ. P. 19 as not mandating the joinder of joint obligors.").

The Court can also accord complete relief between Lonza and Ritual without USPL's joinder, whether such consists of monetary damages, injunctive relief, or a combination. When courts find complete relief unavailable, it has principally been because the absent party stood to play a "significant role" in the anticipated injunctive relief. *Rose v. Simms*, No. 95 Civ. 1466, 1995 WL 702307, at *3 (S.D.N.Y. Nov. 29, 1995) (cleaned up). That is not the case here. The injunctive relief Lonza seeks against Ritual would bar *Ritual* from "disclosing" its trade secret information. AC at 27. That can be accomplished without USPL's being a party. And the

17

injunctive relief Lonza seeks against USPL in the AC is distinct—it would bar USPL from "using" its trade secret information. *Id.*

The relief Lonza seeks does not inherently require entangling Ritual and USPL in a common lawsuit. If Lonza prevails against Ritual and is granted the relief it seeks, Ritual will be enjoined from disclosing Lonza's asserted trade secrets to any other party, including USPL. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385–86 (2d Cir. 2006). That relief can be awarded and enforced regardless whether USPL is a party. And it can be effective regardless of the outcome of a later lawsuit between Lonza and USPL in a court where personal jurisdiction was proper. Whether or not such a suit resulted in an injunction against USPL from using Lonza's asserted trade secrets that it had obtained from Ritual, the bar on Ritual's going-forward dissemination of the same would stand. *Edward B. Beharry & Co. v. Bedessee Imports Inc.*, No. 9 Civ. 77, 2013 WL 12363612, at *3–4 (E.D.N.Y. June 24, 2013). And Lonza does not argue that its ability to obtain money damages from Ritual (or USPL) would be affected by whether USPL were joined in this lawsuit. *See* Opp'n. at 14–15. This case does not implicate considerations of insolvency or indemnification, let alone in a manner that might impair Lonza's ability to recover were the two defendants not joined at a common trial. *See, e.g., Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 48–49 (2d Cir. 1996); *B&H Foto & Elecs. Corp. v. EarthCam, Inc.*, No. 23 Civ. 7633, 2026 WL 836713, at *12–13 (S.D.N.Y. Mar. 26, 2026); *Kollidas v. Cincinnati Ins. Co.*, No. 21 Civ. 1126, 2025 WL 712756, at *4 (W.D.N.Y. Mar. 5, 2025).

***Joinder unnecessary based on evidence possessed by USPL***: Nor does Rule 19 support joinder based on USPL's possession of evidence relevant to the Lonza-Ritual dispute. Under Second Circuit case law, possession of evidence does not make an entity a "necessary" party to

18

an action. Whether a party is necessary is "something quite different from the questions and problems associated with obtaining evidence from such an entity." *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 188 (2d Cir. 1999) (quoting *Costello Publ'g Co. v. Rotelle*, 670 F.2d 1035, 1044 (D. C. Cir. 1981)). And the need for discovery from a non-party plainly does not make the non-party's joinder is mandatory under Rule 19. It is quotidian for non-parties to supply evidence—testimonial and documentary—central to disputes among others. *See, e.g., Atlantic Mut. Ins. Co. v. Polar Air Cargo, Ltd.*, No. 99 Civ. 3176, 2000 WL 45706, at *2 (S.D.N.Y. Jan. 20, 2000) ("[F]acilitating discovery is not a basis for involuntary joinder. Courts have explicitly rejected the argument that knowledge of relevant information renders an individual an indispensable party." (cleaned up)); *Klecher v. Metro. Life Ins. Co.*, 331 F. Supp. 2d 279, 288 (S.D.N.Y. 2004) ("Rule 19, for example, which governs the joinder of indispensable parties, does not include access to discovery as a reason to join a party."); *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp.*, 742 F. Supp. 2d 446, 456 (S.D.N.Y. 2010) (to the extent non-party had relevant information, it was sufficiently discoverable through third-party discovery and insufficient to confer "necessary party" status on non-party); *Excellus Health Plan, Inc. v. Blackfly Invs.*, No. 24 Civ. 6263, 2025 WL 908426, at *3 (W.D.N.Y. Mar. 26, 2025) (finding that the fact certain non-parties possessed "evidence" material to plaintiff's claims did not render them necessary, under Rule 19, to "grant complete relief between the existing parties").

Lonza's claim that joinder is necessary on this ground is especially weak on the facts here, because USPL has already produced discovery relevant to Lonza's claims against Ritual. USPL represents it has produced 5,577 (20,771 pages) documents responsive to Lonza's and Ritual's subpoenas and that its vice president of research and development testified in a Rule 30(b)(6) deposition. Dkt. 146 ("Reckler Decl.") ¶¶ 12–13. USPL has further represented that it

has fully complied with Lonza's discovery requests based on the original complaint. Lonza has not refuted that representation.[8]

*Additional considerations*: Lonza's argument that joinder is necessary is, further, weakened by the nature of its claims against Ritual. Those claims centrally turn on the contract between Lonza and Ritual. But USPL was not a party to that contract. USPL is referenced there solely as a "[s]upplier." Agreement at 14. And Lonza has not come forward with any agreement with USPL that incorporates the Lonza-Ritual Agreement by reference. This case is thus far afield from those finding contractual parties necessary under Rule 19. *See, e.g., Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 707–08 (S.D.N.Y. 1997) (finding a "direct party to the contract which is under dispute . . . . a necessary party to this litigation"); *Delcon Constr. Corp. v. U.S. Dep't of Hous. & Urban Dev.*, 205 F.R.D. 145, 148 (S.D.N.Y. 2002) ("[i]t is well established that a party to the contract that is the subject of the litigation is a necessary party" (cleaned up)); *Kawahara Enters., Inc. v. Mitsubishi Elec. Corp.*, No. 96 Civ. 9631, 1997 WL 589011, at *3 (S.D.N.Y. Sept. 22, 1997) ("adjudication of plaintiff's breach of contract . . . claims" required parties to the contract to be joined as necessary parties); *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease

---

[8] Lonza's counsel acknowledged during the March 17, 2026 conference that it had not told USPL "that any discovery from [it] was outstanding." Mar. 17, 2026 Tr. at 29. Lonza's counsel later stated that, during the deposition of USPL's 30(b)(6) witness, Lonza became aware of any additional areas of potential discovery. *Id.* at 30. But whether or not Lonza had a viable basis to pursue this discovery or to object to its non-production—and Lonza's counsel acknowledged not raising a discovery dispute pursuant to the Court's Individual Rules, *id.* at 31—Lonza does not make any argument why these materials necessitate adding USPL as a party. *See also* Reckler Decl. ¶ 14 ("Lonza never challenged the sufficiency of the production or the testimony of the witness that it deposed.").

or a contract, all parties who may be affected by the determination of the action are indispensable" (cleaned up)).

In a final argument, Lonza states that the Court's decision to permit it to amend the complaint to add USPL supports that USPL is not "peripheral" to the case. Opp'n. at 13. That argument fails badly. In permitting Lonza to make an untimely amendment to its complaint, the Court pointedly did not determine that Rule 19 applied or that there was otherwise a basis for personal jurisdiction over USPL. *See Lonza I*, 2026 WL 608125, at *8. The operative standard under Rule 19 is not whether an entity is "peripheral" to a dispute but whether its joinder is necessary under the standards defined in the Rule. For the reasons above, USPL's joinder is not.

### 2.    Due Process Clause

USPL makes a substantial argument that exercising jurisdiction over it would, further, not comply with due process. But, because the Court has not found a statutory basis for personal jurisdiction, there is no occasion to resolve that question. *Charles Schwab Corp.*, 883 F.3d at 81–82; *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2011) ("Except where the long-arm statute permits jurisdiction to the extent permitted by principles of Due Process—as it commonly does in states other than New York—analysis under Due Process principles is not necessary unless there is long-arm jurisdiction under the applicable state statute."); *Licci ex rel. Licci*, 732 F.3d at 170 ("despite the fact that section 302(a)(1) of New York's long-arm statute and constitutional due process are not coextensive . . . personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis").

### CONCLUSION

For the foregoing reasons, the Court grants USPL's Rule 12(b)(2) motion and dismisses Lonza's claims against USPL. The dismissal is without prejudice to Lonza's right to bring

claims against USPL in a court in which personal jurisdiction is proper. The Court respectfully directs the Clerk of Court to terminate the motion pending at docket 144.

The Court directs Lonza and Ritual to file a revised case management plan on the docket of the case within one week of today.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: May 19, 2026
    New York, New York

22